F. D. McGann, *et al.*

*v.*

Hobbs Lumber Company, *a Corporation*

*v.*

The Aetna Casualty and Surety Co., *a Corp., et al.*

(No. 12396)

Submitted October 12, 1965.    Decided December 14, 1965.

*Clowes, McDermott & Ewing, James R. Ewing,* for appellant.

*McCamic & Tinker, Jeremy C. McCamic,* for appellee.

CAPLAN, JUDGE:

This is an appeal from a final order of the Circuit Court of Ohio County wherein the court, ruling on cross-motions for summary judgments, granted summary judgment to Hobbs Lumber Company, a Corporation, and denied a like motion of the Aetna Casualty and Surety Company. The question presented is whether, in the circumstances of this case, certain insurance policies issued by Aetna to Hobbs afford coverage. The trial court held that Hobbs was covered under the provisions of such policies and from that judgment Aetna prosecutes this appeal.

F. D. McGann and Margaret B. McGann, plaintiffs in the original action, retained Hobbs Lumber Company, a building contractor, to construct a residence for them on a lot owned by the McGanns. Pursuant thereto, Hobbs proceeded to construct the residence and when it was completed the McGanns took possession thereof and moved in. Approximately six months after the house had been completed and occupied a portion of the foundation wall collapsed, resulting in substantial damage. The McGanns instituted an

action against Hobbs, alleging in their complaint that the damage to the residence was the result of the negligence of Hobbs in the construction thereof.

Thereafter, the defendant, Hobbs, moved the court, in accordance with the provisions of Rule 14, R.C.P., to make Aetna Casualty and Surety Company, and others not here involved, third party defendants. By an order of the court the third party complaint was filed and served upon the third party defendants.

In the third party complaint, as it relates to Aetna, Hobbs charges that it is entitled to recover from Aetna all sums that may be adjudged against Hobbs in favor of the Mc-Ganns, in their civil action, by reason of the provisions of insurance policy No. 29LC3088 and/or policy No. 29AL3946, issued to Hobbs by Aetna; that Aetna negligently failed to insure Hobbs against the risk or hazard which is the subject of the complaint of the McGanns; that Aetna represented to Hobbs that it was insured against the risk or hazard which is the subject of said complaint and that Hobbs was misled to its detriment; and that Aetna is obligated, under the provisions of said insurance, to defend Hobbs in any action against it arising out of its business.

Answering the third party complaint, Aetna refutes Hobbs' claim, denying that the provisions of said policies of insurance entitle Hobbs to indemnification on the claim of the McGanns. Aetna further denies any negligent failure to insure Hobbs against the risk or hazard which is the subject of the McGann suit, and all other claims of Hobbs.

Hobbs Lumber Company then filed a motion for summary judgment against The Aetna Casualty and Surety Company on the ground that the pleadings, depositions and admissions show there is no issue as to any material fact and that Hobbs is entitled to judgment as a matter of law by reason of the allegations stated in the third party complaint. Aetna also moved for summary judgment, basing its motion on the ground that, there being no issue as to any material fact, no coverage was afforded Hobbs by the policies of insurance in question. Finding that Hobbs was covered by

the policies and that Aetna was obligated to defend the insured, the trial court granted Hobbs' motion for summary judgment and denied the motion of Aetna.

Thus, the principal issue presented for decision is: Do the provisions of the insurance policy in question afford coverage to Hobbs which would indemnify it in relation to the action instituted by the McGanns?

To properly answer this question it is necessary to examine and consider the insurance policy here involved and to determine therefrom its true purpose and intent. Therein Aetna "Agrees with the Insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declaration and subject to the limits of liability, exclusions, conditions and other terms of this policy" to issue certain insurance to Hobbs. Under the Insuring Agreements, in Part 1 of the policy, is the following:

"Coverage D—Property Damage—Liability—
Except Automobile

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Part 2 of this policy includes a General Liability Schedule which discloses all hazards insured thereunder, one of which is:

"(D) Products (Including Completed Operations) General Contracting—Building Construction (Not Prefabricated)
One or Two Family Dwellings"

This is merely a designation of what the insuring clause covers and must be considered together with all the provisions contained in the policy. Part 1 of the policy contains "Exclusions", which, where pertinent, read as follows:

"This policy does not apply: * * * (j) under Coverage D, to injury to or destruction of * * * (4) any goods, products or containers thereof man-

ufactured, sold, handled or distributed or premises alienated by the named Insured, or work completed by or for the named Insured, out of which the accident arises; * * *."

The above quoted policy provisions give rise to this controversy. Aetna contends that the damage referred to in this case having occurred to work completed by Hobbs, the insured, exclusion (j) (4) is operative, and no coverage is afforded. Hobbs, on the other hand, asserts that the inclusion of "(D) Products (Including Completed Operations)", under the General liability Schedule, is in direct conflict with the above quoted exclusion and creates an inconsistency in this policy. It must be kept in mind that the policy in question is a liability policy, not one insuring the property or work of the insured. Covered is any damage caused by the products or operations used or completed by the insured. In other words, if any product used in the operations of the insured or any work completed by the insured causes damage to any property of another for which the insured may be legally liable, the insurer is liable under this policy. This appears to lend coverage to Hobbs in this case, and it would, except for exclusion (j) (4) contained in the policy. At this point Hobbs contends that such exclusion is in direct conflict with (D), listed under the General Liability Schedule and quoted above. We do not agree with this contention. The insuring agreement, Coverage D—Property Damage Liability—Except Automobile, and the items designated in the Liability Schedule, including (D), must be read together. These, where pertinent to this case, constitute the coverage afforded by this policy, subject to the exclusions. As noted above, Exclusion (j) (4) clearly provides that this policy does not apply to premises alienated by the insured or to work completed by the insured out of which the accident arises. It is undisputed that the damaged premises here involved was that alienated by the insured and was work completed by the insured out of which the accident arose.

It is the position of Hobbs that if it does not have coverage by virtue of (D) of the General Liability Schedule, the policy offers no coverage at all. This does not follow. If

the completed operations referred to in (D), being the house constructed by Hobbs for the McGanns, had damaged or destroyed other property of the McGanns or had caused damage to some third person's property, the insurer, Aetna, would be liable therefor. Thus, due to the inclusions of (D), liability insurance is provided for damage done by completed operations. By reason of the aforesaid exclusion, however, damage to completed operations is not covered.

In *Liberty Building Co.* v. *Royal Indemnity Company*, 2 Cal. Rptr. 329, 346 P. 2d 444, the plaintiff, a building contractor, constructed a number of dwelling houses. After the buyers took possession many of the houses developed defects in the outside stucco walls. Claims were filed against the plaintiff and it became necessary for the plaintiff to expend considerable sums of money to repair the walls. The plaintiff was covered by a products liability insurance policy issued by the defendant and sought to recover, under the policy, amounts paid in repairing the houses and settling buyers' claims. Therein the insuring agreement, Coverage C, was identical to Coverage D in the instant case. However, the coverage was limited by the following exclusion: "This policy does not apply: (f) under Coverage C, to injury to or destruction of * * * (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, *out of which the accident arises.* (Emphasis added.)"

Holding that the damage to the stucco was excluded from the coverage of the policy, the Court said: "This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the

stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the plainting would be recoverable under the policy while the damage to the walls would not. The principle here applicable is well stated in Heyward v. American Casualty Company of Reading, Pa., D. C., 129 F. Supp. 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to *other property* or *personal injury* arising out of such accident.' "

It does not appear in the opinion of that case whether that insurance policy included an item similar to (D), which is under the General Liability Schedule in the policy in the instant case, but we are inclined to think that it did. Otherwise, there would be no liability for other property damage or personal injury caused by work completed by the insured. See *Aetna Casualty and Surety Company* v. *Harvey W. Hottel, Inc.,* 289 F. 2d 457, and *Volf* v. *Ocean Accident and Guarantee Corporation,* 50 Cal. 2d 373, 325 P. 2d 987.

It is widely recognized that language of insurance policies is often necessarily complicated and difficult for the layman to fully understand. This alone does not connote ambiguity. Contracts of insurance, like other contracts, must receive a practical and reasonable interpretation consonant with the apparent object and intent of the parties. 29 Am. Jur., Insurance, §251. As held in *Equitable Life Assur. Soc. For the United States* v. *Gillam,* 195 Ga. 797, 25 S. E. 2d 686, 147 A.L.R. 1008, an insurance policy must be construed in the light of reason, in view of its purposes, the situation of the parties, and the benefits to be conferred.

The insurance issued in the instant case is a liability policy, not a builder's risk policy, which, incidentally, this in-

sured could have obtained if he had desired the coverage he now claims. This liability policy clearly was designed to indemnify the insured against damage to other property or parties. It was not intended to cover his property or work completed by the insured. In the light of reason, in view of its purpose and considering the situation of the parties, we are of the opinion that, by reason of the exclusion, the policy did not intend to offer coverage for damages to a building completed by the insured, but did offer liability coverage for such completed work.

In so deciding this case, we are not unmindful of the decision in *Peerless Insurance Company* v. *Clough,* 105 N. H. 76, 193 A. 2d 444, upon which the trial court and the appellee rely. Therein the Court said that the policy was needlessly misleading and obscure, which if it could be comprehended at all, would lead the insured to believe he was covered. The Court then stated that "the policy is held to mean what a reasonable person in the position of the insured would think it meant." This presents the minority view, with which we do not agree. The issuance of an insurance policy creates a contractual relationship wherein the intent of both parties must be considered, together with the purpose of such policy. The *Peerless* case is not controlling in the instant circumstances.

It is alleged in the third party complaint that Aetna, under the terms of the policy, is obligated to defend Hobbs in the action instituted against it by the McGanns. The policy provides: "With respect to such insurance as is afforded by this policy, the Company shall: (a) defend any suit against the Insured * * *." In view of our holding that the liability alleged in the complaint against Hobbs is excluded under (j) (4) of the Exclusions contained in the policy, the appellant, Aetna, has no duty to so defend. Hobbs argues that Aetna should be required to defend because the complaint could be amended to include damage to other property of the McGanns. In answer we can only say that if that contingency occurs, then Hobbs may look to Aetna for coverage and representation.

As the second cause of action in the third party complaint Hobbs alleges that Aetna "negligently failed to insure the defendant, Hobbs Lumber Company, a Corporation, against the risk or hazard which is the subject of the complaint filed by plaintiffs, F. D. McGann and Margaret B. McGann * * *." We are in agreement with the holding of the trial court that the contention of Hobbs, as reflected by this allegation, can not be sustained. Nothing in the record before us will support the position of Hobbs in this regard. The most that can be gleaned from the Statement of Fact and Affidavit In Support of Such Motion (Hobbs' motion for summary judgment), executed by Russell G. Hobbs, Sr., is that Mr. Hobbs "wanted the best coverage possible in his business", and that Aetna's agent intended to give Hobbs the best coverage possible, including the hazard of earth movement. There is no showing that Hobbs requested any special coverage or that the agent of Aetna failed, negligently or otherwise, to provide the insurance requested. Any statements attributed to Aetna's agent, made after the accident, as to the coverage afforded, can have no bearing on this particular question.

A further contention of the insured is that Aetna represented to Hobbs after the accident that it was insured against the risk or hazard which is the subject of the McGann complaint and that Hobbs was thereby misled to its detriment. It relies upon statements made by the insurance agent from whom the policy was purchased. These were statements alleged to have been made by the agent and by a secretary in the agent's office to the effect that Hobbs' insurance covered the damage reported. This gives rise to the question of whether such representation by the agent would estop Aetna from denying coverage. The trial court indicated that there was insufficient evidence to definitely decide that question. However, we find the general rule to be that a soliciting agent has authority only to solicit insurance, submit applications therefor to the company and to perform such acts as are incident to that authority. He may, in proper circumstances, bind the company in relation to the application for insurance but not as to matters relating to

the subsequent contract of insurance. 44 C.J.S., Insurance, §152; 29 Am. Jur., Insurance, §248. See *Spencer* v. *Travelers Insurance Company*, 148 W. Va. 111, 133 S. E. 2d 735; *Holland* v. *Interstate Fire Insurance Company*, 229 Ark. 491, 316 S. W. 2d 707; *Rassieur* v. *Mutual Ben. Life Ins. Co.*, 356 Mo. 48, 201 S. W. 2d 173; *Miller* v. *Illinois Bankers' Life Association*, 138 Ark. 442, 212 S. W. 310, 7 A.L.R. 378; and *Thompson* v. *Equitable Life Assur. Soc.*, 199 N. C. 59, 154 S. E. 21, 85 A.L.R. 739. We therefore find no merit in this contention.

In view of the foregoing, the judgment of the Circuit Court of Ohio County is reversed and the case is remanded for disposition in accordance with the principles enunciated herein.

*Reversed and remanded.*