Arnold R. CLARK, Plaintiff,

v.

ASSOCIATES COMMERCIAL CORP., A
Delaware Corporation, Defendant
and Third–Party Plaintiff,

v.

Bob HOWARD d/b/a/ H & J Rec Auto, Inc.;
Clark Investigation & Recovery, Inc.;
Randall Wayne Lett; and such other
unknown third parties as were liable for
any occurrence in Knoxville, Tennessee,
Third–Party Defendants.

Civ. A. No. 92–1325–MLB.

United States District Court,
D. Kansas.

Nov. 9, 1994.

W. Thomas Gilman, Martin R. Ufford, Redmond, Redmond & Nazar, Wichita, KS, for Arnold R. Clark plaintiff.

Eric D. Bruce, Kenneth H. Jack, Bruce & Davis, Wichita, KS, for Associates Commercial Corp.

William R. Sampson, Paul W. Rebein, Shook, Hardy & Bacon, Overland Park, KS, for Shook Hardy & Bacon.

Bryce A. Abbott, Natalie G. Haag, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, for Clark Investigation & Recovery, Inc., Randall Wayne Lett.

## MEMORANDUM AND ORDER

BELOT, District Judge.

The following motions are before the court:

1. Defendant and Third–Party Plaintiff Associates Commercial Corporation's Motion for Summary Judgment on All Claims of Arnold Clark, including Newly Filed Claims (Doc. 210), filed May 13, 1994;

2. Third–Party Defendants Clark Investigation & Recovery, Inc. and Randall Wayne Lett's Motion for Summary Judgment (Doc. 208), filed May 13, 1994;

3. Associate Commercial Corporation's Motion for Leave to Assert the Defense of Comparative Fault (Doc. 234), filed June 29, 1994.

Plaintiff has filed the present action against defendant Associates alleging a "breach of peace" in violation of U.C.C. § 9–503. The alleged "breach of peace" occurred at a truck stop near Knoxville, Tennessee when third-party defendant Randall Wayne Lett attempted to repossess plaintiff's tractor-trailer rig. Associates, which held a security interest in the tractor-trailer, hired third-party defendant Bob Howard as an independent contractor to handle the repossession. Howard located plaintiff in Tennessee and, without consulting Associates, contacted third-party defendant Clark Recovery & Investigation who sent Lett to repossess the tractor-trailer. The ensuing confrontation between Lett and plaintiff at the truck stop near Knoxville is discussed in detail in the court's May 27, 1994 Memorandum and Order denying Associates's first motion for summary judgment. (Doc. 217, pp. 4–6). Other pertinent facts and the standards for summary judgment are also set forth therein, as well as in the court's June 7, 1993 Memorandum and Order (reported at 149 F.R.D. 629 (D.Kan.1993)).

I. *Associates's Second Motion for Summary Judgment*

A. *Count VII of Plaintiff's Amended Complaint*

In his original complaint, plaintiff alleged six counts against Associates, including

causes of action for conversion, battery, breach of contract, outrage (intentional infliction of emotional distress), and invasion of privacy. (Doc. 1). During an August 6, 1993 pretrial conference, plaintiff's counsel indicated that based on new information he had received concerning punitive damages, he wished to amend his complaint and add a seventh count for "intentional and reckless conduct." (Tr. of Pretrial Conference, pp. 9–11). Plaintiff's counsel explained the theory underlying this additional count as follows:

> We are ... alleging ... the establishment of an independent contractor relationship [between Associates and Howard] where one maintains no control over the manner in which repossession is conducted....
>
> The theory is that by establishing an independent contractor relationship, thereby necessitating no control, they have acted recklessly with regard to their duty to insure that the property is repossessed without breaching the peace.

(Tr. 10, 15). According to plaintiff's counsel, this "theory" provided an alternative basis for the imposition of punitive damages:

> I'm basically setting out the theories for punitive damages in this count 7....
>
> We in addition[,] in accordance with the Court's order, ... my understanding is that because this is a non-delegable duty, vicarious liability flows back and we are asserting punitive damages on the basis of vicarious liability in addition to the reckless conduct that we've alleged.[1]

(Tr. 17). Hence, with the addition of Count VII, plaintiff planned to submit two theories of recovery with respect to punitive damages: (1) the vicarious liability theory addressed in the court's June 7, 1993 Memorandum and Order, predicated on allegations of intentional and/or reckless conduct on the part of the third-party defendants, particularly Randall Wayne Lett; **and** (2) a direct liability theory, predicated on allegations of intentional and/or reckless conduct on the part of Associates itself.

The court eventually agreed during the pretrial conference to allow plaintiff to amend his original complaint. On September 1, 1993, plaintiff accordingly filed an Amended Complaint including the following count: "COUNT VII—RECKLESS AND INTENTIONAL BREACH OF DUTY." (Doc. 157, ¶¶ 35–37). Therein, plaintiff alleged that Associates's "intentionally establishing an independent contractor relationship between it and Howard and maintaining no control over the repossession ... constitutes an intentional and/or reckless disregard of Defendant's duty to Plaintiff to insure that the repossession in question would be accomplished without a breach of the peace" and that Associates is "liable to Plaintiff for both actual damages and punitive damages for such conduct." *Id.* at ¶ 36.

Associates now seeks summary judgment on Count VII arguing that the allegations therein are nothing more than claims that Associates was, in some greater than ordinary degree, negligent in its supervision of Bob Howard. Associates notes that, during the August 6, 1993 pretrial conference, the court explicitly stated that "[t]his case is not going to go to the jury ... on some kind of negligence theory," and plaintiff's counsel himself stated that "[w]e have no basis to believe that there was any negligence in [Associates's] hiring Bob Howard." (Tr. 41 and 10). Associates further argues that plaintiff has no proof that the "established lending industry practice" of hiring an independent contractor to perform vehicle repossessions constitutes reckless or even negligent conduct. (Doc. 211, p. 21).

---

1. Counsel was here referring to the June 7, 1993 Memorandum and Order in which the court, *inter alia,* denied a motion of Associates for judgment on the pleadings with respect to plaintiff's claim for punitive damages in his original complaint. Looking to Tennessee law by virtue of Kansas choice of law principles, the court found that the duty not to breach the peace is nondelegable and that Associates could therefore be held liable for punitive damages on a vicarious liability theory. The court held that if the repossession was effected through a breach of peace and in a sufficiently egregious manner, a jury would have the discretion to assess punitive damages against Associates irrespective of the fact that Lett and the other third-party defendants were independent contractors. *Clark v. Associates Commercial Corp.,* 149 F.R.D. 629, 637 (D.Kan.1993). (See also the discussion *infra,* note 5).

In response, plaintiff maintains that his allegations in Count VII are **not** intended to state a cause of action for negligence in any form and, specifically, that his allegations do not involve Associates's supervision, or lack thereof, over Bob Howard: "Plaintiff is not arguing that Associates merely recklessly supervised Bob Howard, but is arguing that Associates recklessly avoided its duty to insure that the repossession occur without a breach of the peace." (Plaintiff's Response Brief, Doc. 224, p. 13). According to plaintiff, Associates's act of hiring Bob Howard to accomplish the repossession was purposely designed to "insulate [Associates] from its duty [not to breach the peace] and any resulting liability if the duty were breached." *Id.* at 12.

█ As discussed *supra*, plaintiff was allowed to amend his original complaint in order to set forth an additional theory with respect to **punitive** damages.[2] As this court has previously recognized, punitive damages can be imposed only if the defendant has acted in a "sufficiently egregious" manner. *See Clark v. Associates Commercial Corp.*, 149 F.R.D. 629, 637 (D.Kan.1993). Under Kansas law, a plaintiff seeking punitive damages must prove that the defendant acted with "willful conduct, wanton conduct, fraud or malice." K.S.A. § 60–3701(c). Similarly, under Tennessee law, the court may award punitive damages "only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *See Hodges v. S.C. Toof and Co.*, 833 S.W.2d 896, 901 (Tenn.1992).[3] The allegation in Count VII—that in hiring an independent contractor to handle the repossession of his tractor-trailer, Associates intentionally or recklessly

disregarded the potential for a breach of peace and injury to plaintiff—might theoretically support an award of punitive damages under either of these standards. The all too apparent problem with the claim in Count VII, however, is that plaintiff has produced no evidence to support it! Plaintiff points to certain responses Associates gave to requests for admissions: (1) that it intended to allow Bob Howard to have "complete supervisory authority" over the repossession; and (2) that it did not provide Bob Howard with any written or verbal "policy" regarding the repossession other than that it was to be done peaceably. Plaintiff also notes that the contract between Associates and Bob Howard required Howard to indemnify Associates for claims arising out of any breach of peace. While these facts demonstrate that Associates knew that a breach of peace could occur during the repossession of plaintiff's tractor-trailer, the same can be said of every creditor who hires someone else to perform a repossession. What's missing is evidence that some sort of malevolence or desire to avoid liability motivated Associates in its decision to retain Bob Howard. The evidence actually suggests the opposite—that Associates selected Howard in part because he could be trusted to repossess plaintiff's tractor-trailer in a peaceable manner, and that Associates had no reason to believe that Howard would delegate the responsibility of carrying out the repossession to someone else. Indeed, even plaintiff's own counsel has conceded that there is "no basis to believe that there was any negligence in [Associates's] hiring Bob Howard." (Tr. 10). The court, therefore, perceives no basis for the imposition of punitive damages against Associates on plaintiff's second or alternative the-

---

**2.** With respect to **actual** damages, the theory of recovery set forth in Count VII is completely irrelevant. As the court's May 27, 1994 Memorandum and Order denying Associates's first motion for summary judgment makes palpably clear, the only liability issue to be tried with respect to actual damages is essentially whether or not there was a breach of peace. (Doc. 217, pp. 18–19). If a breach of peace is found to have occurred, then Associates will be liable for actual damages.

**3.** The parties appear to believe that Kansas law controls Count VII because it concerns actions taken by Associates in Kansas. (See Doc. 224, p.

7). As the court noted in its June 7, 1993 Memorandum and Order, however, plaintiff's claims appear to sound in tort, and Kansas follows the choice of law rule of *lex loci delicti* or "place of the wrong." *Clark*, 149 F.R.D. at 636. It is possible, therefore, that Tennessee law would apply to the claim alleged in Count VII, since the "situs of the injury" appears to be Tennessee. *See id.* In any event, the substantive prerequisites for the imposition of punitive damages in Kansas and Tennessee do not materially differ, and the court need not decide this choice of law question to rule on defendant's motion.

ory and accordingly grants Associates's motion for summary judgment with respect to Count VII. Plaintiff has simply failed to present any evidence that Associates intentionally, recklessly, or maliciously attempted to avoid or cast off its duty not to breach the peace.[4]

### B. *Paragraph 12 of Plaintiff's Amended Complaint*

Associates also seeks summary judgment with respect to paragraph 12 of plaintiff's amended complaint in which plaintiff alleges that Bob Howard committed a breach of peace by using "fraud, trickery and deceit" to learn the whereabouts of plaintiff. (Doc. 157, ¶ 12). In his response, plaintiff concedes that, based on the court's May 27, 1994 Memorandum and Order, Howard's alleged trickery would not itself constitute a breach of peace. Additionally, plaintiff has not specifically alleged a cause of action for breach of peace via "fraud, trickery and deceit," nor has he presented any Kansas or Tennessee cases holding that the use of trickery constitutes a breach of peace. Accordingly, the court grants summary judgment with respect to any such claim.

### II. *Third–Party Defendants' Motion for Summary Judgment*

Third-party defendants Clark Investigation & Recovery and Randall Wayne Lett move for summary judgment on Associates's third-party complaint for indemnity. Most of the issues raised in this motion are resolved or rendered moot by the court's previous orders and/or its findings in Section I.

First, Clark Investigation and Lett contend that they are entitled to summary judgment because plaintiff cannot recover from Associates based on a vicarious liability theory. The court's June 7, 1993 and May 27, 1994 orders, holding that Associates's duty not to breach the peace is nondelegable, thoroughly disposes of this argument.

Second, Clark Investigation and Lett contend that they are not liable in indemnity for any damages plaintiff obtains under Count VII of his amended complaint. Part A of Section I of this opinion, *supra,* granting Associates summary judgment with respect to Count VII, renders that contention moot.

Third, Clark Investigation and Lett contend that they are not liable in indemnity for any damages attributable to the acts of Bob Howard. As stated in part B of Section I of this opinion, *supra,* no breach of peace claim predicated on Bob Howard's acts of trickery has been specifically alleged, and, to the extent that such a claim is alleged, summary judgment is herein granted.

Fourth, Clark Investigation and Lett contend that they are not liable in indemnity for any claim that the manner in which Associates disposed of plaintiff's tractor-trailer was not commercially reasonable. As Associates correctly observes, plaintiff's amended complaint does not include any claim that the sale of the tractor-trailer was commercially unreasonable.

 Only one issue raised in the third-party defendants' motion remains: Can Clark Investigation and Lett be held liable in indemnity for punitive damages assessed against Associates based on plaintiff's vicarious liability theory discussed *supra?*

The Restatement (Second) of Torts § 886B states:

> (1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.
>
> (2) Instances in which indemnity is granted under this principle include . . .
>
> (a) The indemnitee was liable only vicariously for the conduct of the indemnitor. . . .

---

4. Plaintiff's counsel argues that the court should deny Associates's motion for summary judgment on Count VII because he might "obtain further evidence of Associates' subjective knowledge in the event the court compels Associates to produce its training manual pursuant to plaintiff's pending motion to compel discovery." (Doc. 224, p. 20). A minute order filed with the court June 15, 1994 indicates that this motion to compel of which counsel speaks has been denied. (Doc. 226).

Hence, if a person is liable for punitive damages solely because another person has acted in a manner sufficiently egregious to warrant them, the first person is entitled to be indemnified by the second person who is truly culpable. Applied to the present case, if Associates is held liable for punitive damages only because of the third-party defendants' egregious conduct violating their duty not to breach the peace in the course of the repossession, then Associates is entitled to be indemnified by the third-party defendants. This will prevent the third-party defendants from being unjustly enriched at Associates's expense.[5]

### III. Associates's Motion to Assert Defense of Comparative Fault

Associates moves the court for an order granting it leave to assert the defense of comparative fault. Associates contends that comparative fault principles are now applicable to the present case by virtue of the court's May 27, 1994 Memorandum and Order in which, according to Associates, the court *sua sponte* "recharacterized" plaintiff's claim as one of strict liability.

In its May 27, 1994 Memorandum and Order, the court thoroughly analyzed the theoretical bases for the nondelegability doctrine as it is applied to cases involving UCC § 9–503. The court did so in order to explain to Associates why, in the court's opinion, nondelegability extended to the present case—i.e., to a case in which the independent contractor who actually breached the peace was an independent contractor once removed. (See Doc. 217, p. 10). The court found that those courts which have adopted the nondelegability doctrine in the UCC § 9–503 context have done so based largely on analogous negligence claims involving statutory requirements to take safety precautions (Restatement (Second) of Torts § 424) or inherently dangerous activities (Restatement (Second) of Torts § 427). *Id.* at 12–18. Looking to the rationales offered by these courts, the court ruled that a creditor simply " 'cannot escape the duty of peaceable repossession by delegating it to an independent contractor,' whether an independent contractor in the first instance or an independent contractor once removed." *Id.* at 19 (quoting *MBank Elpaso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex.1992)). The court found that a creditor's duty not to breach the peace is nondelegable and absolute in nature: "If

---

**5.** In responding to the third-party defendants' motion, Associates expresses some confusion as to the effect of the court's prior rulings concerning punitive damages. (Doc. 219, pp. 5–6). In its June 7, 1993 Memorandum and Order, the court denied a motion by Associates for judgment on the pleadings with respect to punitive damages. The court found as follows:

> Under Tennessee law, "punitive damages may be awarded against a principal whose liability arises from the acts of an agent." *Dodson v. Anderson*, 710 S.W.2d 510, 513 (Tenn.1986). Moreover, Tennessee recognizes that the duty to repossess peaceably is nondelegable, and thus, "a secured party is vicariously liable for wrongful acts of the repossessor even if the repossessor is an independent contractor." *McCall v. Owens*, 820 S.W.2d 748, 751–52 (Tenn.Ct.App.1991). *Accord King v. Citizens Bank of Warrensburg*, No. 88–2576–O, 1990 WL 154210, at *4 n. 7 (D.Kan. Sept. 19, 1990) (applying Missouri law, "Each state that has been faced with the issue has decided that § 9–503 imposes a nondelegable duty on the secured party to ensure that self-help repossessions are performed without breaches of the peace."). Nonetheless, although the principal may be held vicariously liable for punitive damages based upon the agent's tortious

act within the scope of his agency, "such liability is not legally mandatory," and the jury has discretion to refuse to award punitive damages against a principal based solely upon the wrongful acts of the agent. *Huckeby v. Spangler*, 563 S.W.2d 555, 559–60 (Tenn.1978). This discretion also allows a jury to decline to assess punitive damages against a secured party based upon a wrongful repossession at the hands of an independent contractor. *See McCall*, 820 S.W.2d at 753.

> The court concludes that plaintiff has stated a viable claim for punitive damages. If the repossession was effected through a breach of peace, and in a manner sufficiently egregious under Tennessee law, a jury would have the discretion to assess punitive damages against Associates irrespective of third-party defendants' status as agents or independent contractors.

> The court's ruling stands firm. Associates **may** be held liable for punitive damages in the event a sufficiently egregious breach of the peace is found to have occurred. However, because the goals of punitive damages are to punish and deter, not to compensate, the jury **may** also choose not to impose punitive damages if, in its view, those goals would not be served. (See the court's May 27, 1994 Memorandum and Order, Doc. 217, p. 25).

there was a breach of the peace during the course of the repossession, then Associates failed to fulfill its duty under Tenn.Code Ann. § 47-9-503 to ensure no breach of peace and is liable for any resulting injuries." *Id.* at 18-19.

In explaining the reasoning behind its ruling on the issue of vicarious liability, the court made statements which Associates now contends magically converted plaintiff's claim under UCC § 9-503 into one of strict liability in tort. First, in footnote 6 on page 19 of the Memorandum and Order, the court noted that although UCC § 9-503 breach of peace claims have been analogized to negligence claims, plaintiff's claim is actually more like a claim of strict liability, because it requires no proof of negligence, but merely proof that a breach of peace occurred.[6] *See id.* at p. 19, n. 6 and cases cited therein. Associates claims this constituted a recharacterization of plaintiff's claim. Clearly, however, the court was merely offering an explanatory analogy for the benefit of Associates, which had previously argued that there must be evidence of negligence on its part in order for plaintiff to prevail. There are no negligence or strict liability claims involved in this case. Instead, plaintiff has pled causes of action for breach of contract and intentional torts, each of which revolves around the all important factual question of whether or not there was a breach of peace, just like a strict products liability action would revolve around the all important factual question of whether there is a product defect.

Second, Associates points to the following statement from page 18 of the Memorandum and Order: "[H]aving initiated the repossession process, it was Associates's affirmative statutory duty to ensure that the repossession was conducted in a peaceable manner, no matter how tenuous the connection between Associates and the ultimate repossessor, Lett, may have been." Associates contends that, under the court's ruling, "Associates could successfully establish that Randall Lett was a stranger, and still be held liable."

(Doc. 235, p. 5). This, of course, completely misconstrues the court's ruling. Obviously, if there was no connection between Associates and Lett—a hypothetical which the court did in fact contemplate in analyzing the prior motion for summary judgment—Lett would have been nothing more than a common criminal, and Associates could not be held liable for Lett's actions. That is why the court, at the beginning of the sentence cited by Associates, used the words "having initiated the repossession process," noting that **Associates** was in fact the instigator of the events which eventually led to the alleged breach of peace.

■■ In sum, the court clearly ruled in its May 27, 1994 Memorandum and Order that Associates can be held **vicariously liable** for the actions of Randall Wayne Lett even though he was not directly retained by Associates. At no point in its efforts to explain this ruling did the court abandon its earlier adoption of the Tennessee court's holding in *McCall* that "the duty to repossess peaceably is non-delegable, and thus, 'a secured party is vicariously liable for wrongful acts of the repossessor even if the repossessor is an independent contractor.'" *Clark,* 149 F.R.D. at 637 (quoting *McCall,* 820 S.W.2d at 751–52). Accordingly, Associates's transparently disingenuous attempt to derive a basis for comparing fault from the court's May 27, 1994 Memorandum and Order is rejected. Allowing Associates to compare fault with the third-party defendants at trial would be tantamount to allowing it to cast upon those defendants its **nondelegable** duty not to breach the peace, a result manifestly inconsistent with Tennessee law.

**IT IS ACCORDINGLY ORDERED** (1) that defendant Associates Commercial Corporation's second motion for summary judgment (Doc. 210) is hereby granted; (2) that third-party defendants Clark Investigation & Recovery, Inc. and Randall Wayne Lett's motion for summary judgment (Doc. 208) is granted in part and denied in part as set

---

**6.** In the same footnote, the court also noted that plaintiff's claim is, in a sense, more like a claim of primary rather than vicarious negligence, in that the duty to take precautions against a breach of peace rests squarely with the creditor (Associ-

ates) itself. Of course, Associates's potential liability remains basically vicarious in nature in that it was someone else (Randall Wayne Lett) who actually brought about the alleged breach of peace.

forth herein; and (3) that defendant Associate Commercial Corporation's motion for leave to assert the defense of comparative fault (Doc. 234) is hereby denied.

Motions for reconsideration of this Order are discouraged and, if filed, shall be limited to ten pages. A response likewise shall be limited to ten pages, and a reply will not be allowed. All page limits include attachments and appendices.